E-FILED 2014 NOV 13 2:31 PM CLAY - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR CLAY COUNTY

| | | |
|---|---|---|
| SHINE BROS. CORP., Plaintiff, vs. AMERICAN INTERNATIONAL GROUP, INC., and CHARTIS INC., and CHARTIS SPECIALTY INSURANCE COMPANY Defendants. | ) | LAW NO. PETITION AT LAW |

FACTS COMMON TO ALL COUNTS

COMES NOW John R. Walker Jr., attorney for the Plaintiff, Shine Bros. Corp., and in support of this cause of action against the Defendants herein, states to the Court as follows:

1. That the Plaintiff, Shine Bros. Corp. (hereinafter "Shine") is a corporation organized and existing under the laws of the State of Iowa doing business in Spencer, Iowa, located within the boundaries of Clay County, Iowa.

2. That the Defendant American International Group (hereinafter "AIG") is an insurance company doing business in the State of Iowa operating insurance lines under various subsidiary corporations and tradenames.

3. That the Defendant Chartis, Inc. And Chartis Specialty Insurance Company (hereinafter "Chartis") are insurance companies operating under the AIG umbrella engaged in the sale and distribution of insurance products within the State of Iowa.

4. That the Plaintiff, Shine, operated the facility known as Shine Bros. Corp. at 528 E. Park Street, Spencer, Iowa. That said facility was engaged in industrial activity in an area adjacent to a park owned by the City of Spencer called Pete's Pond Park, which includes "Pete's Pond", a man made water body that is a former quarry and which flowed into the Little Sioux River, a "navigable water" as defined by the Clean Water Act.

5. That as an industrial operation it was necessary to secure a storm water permit. Shine secured the required permit and has operated under that permit at all times material hereto.

6. That in the Summer of 2006, Shine applied for and secured a pollution liability policy from AIG providing insurance coverage for environmental events resulting in certain claims, clean-up costs, property damages and losses, both onsite and offsite as defined by the insurance contract. This initial policy had an effective date commencing July 27, 2006 and terminating on July 27, 2009, and provided coverage to Shine on the business location that forms

the basis of this claim.

7. That the AIG insurance contract which was to terminate on July 27, 2009 was extended for an additional period commencing July 27, 2009 and terminating July 27, 2012. Once again, the contract of insurance provided insurance coverage for environmental events resulting in certain claims, clean-up costs, property damages and losses, both onsite and offsite as defined by the insurance contract.

8. That a third renewal of the pollution policy occurred extending the contract commencing July 27, 2012 and effective through July 27, 2015. This policy was issued by Chartis Specialty Insurance Company, providing insurance coverage for environmental events resulting in certain claims, clean-up costs, property damages and losses as described in the insurance contract. Chartis was an AIG company marketed under the Chartis name.

9. That the pollution policy issued by Chartis provided for attorney's fees, clean up costs, the payment of civil fines, as well as other consequential damages set forth under the terms of the policy. This policy is attached hereto, incorporated herein and marked Exhibit "A". The policy once again continued the uninterrupted pollution coverage previously described and originally secured in 2006 by Shine.

10. That the pollution coverage insuring the Shine facility continued without interruption from July 27, 2006, through July 27, 2015. No claims or demands for damages were made against Shine or submitted to AIG until Shine received a notice dated March 31, 2014, threatening to file legal action and including a draft Complaint issued by The United States Environmental Protection Agency (hereinafter referred to as "USEPA"). Shine's first notice of a claim for was received by Shine approximately 20 months into the final policy period, which continued through the year 2015.

11. That the legal threat issued by USEPA and sent to Shine dated March 31, 2014, by certified mail - return receipt requested, alleged that contaminants found their way into "Pete's Pond Park" as a result of melting snow, excessive storm water, and wind causing the migration of materials identified as "fluff" and insulation to settle in "Pete's Pond Park".

12. That the USEPA requested payment of a civil penalty, called for an action plan, and required Shine to assume the financial cost of removing the offending materials from "Pete's Pond Park" that the government identified as having migrated from the Shine facility.

13. That upon receipt of the certified Complaint by the federal government in late March of 2014, Shine contacted the broker responsible for placing the AIG pollution contract with Shine, for guidance and direction and to insure that the appropriate representatives of AIG were put on notice of the claim.

14. That in response to the notification, AIG opened a file and initiated a limited investigation, informed Shine that there was no coverage for criminal penalties and issued a reservation of rights with regard to AIG's indemnity liability for clean up costs. Despite the

reservation of rights with regard to AIG's indemnity liability for clean up costs, AIG refused to tender a defense to Shine as required by the contract of insurance forcing Shine to hire its own counsel at its own expense.

15. That the policy of insurance that forms the basis of this claim includes coverage for offsite clean up expense which was a necessary component of the agreement and resolution with USEPA, requiring the expenditure of funds well in excess of the jurisdictional limitations herein.

16. That in addition, Shine was denied the benefit of a legal defense and under the terms of the policy, AIG should be required to reimburse Shine for all of the private attorney fees and expenses incurred as a result of their refusal to tender a defense consistent with their reservation of rights.

17. That the AIG investigator inferred in his opinion that there was no coverage for a civil penalty because of the possibility that Shine's conduct was criminal. This statement was inflammatory and without support and the AIG investigator knew or should have known that the penalty, as described in the federal documents, was civil, and therefore, not excluded under the terms of the contract.

18. Shine is not in breach of the insurance contracts with Defendants and has met all of the preconditions to coverage.

COUNT I

COMES NOW John R. Walker Jr., attorney for Shine and for cause of action against the Defendants, AIG and Chartis, states to the Court as follows:

19. That the Plaintiff hereby incorporates paragraphs 1 through 18 of Facts Common to All Counts.

20. That AIG and its named members had a fiduciary relationship with their Plaintiff insured, Shine, and as a result owed a duty of care to insure that coverage was provided and a defense tendered as required by the terms of the insurance contract, as well as Iowa law.

21. That under the terms of the contract of insurance, AIG et al., is responsible for offsite clean up costs related to the reclamation of the city park as required by the federal government, to remove materials that were identified as emanating from the Shine property.

22. That contrary to the allegations made by the AIG investigator, the fine that was levied by USEPA was civil and covered under the terms of the policy which specifically excludes only criminal penalties.

23. That even though AIG et al., expressed a formal reservation of rights with regard to "clean up costs", they failed to tender a defense to Shine as required by the contract and

Iowa law as long as there was a possibility of coverage.

24. That AIG's failure to tender a defense to Shine constituted a material breach of the insurance contract, subjecting Shine to liability for any legal fees or expenses arising out of the defense of the claim brought by USEPA.

25. That the claim filed by the USEPA was resolved through resolution and consent judgment with the consent of AIG, either express or implied.

26. That by failing to participate in the defense of the Shine claims, AIG waived any right to a factual determination by a Court or jury, as a result AIG should be prohibited from speculating that the ultimate outcome of the litigation would have supported any argument against coverage for clean up costs.

27. That the actions of AIG, et al., constitutes a breach of their contractual obligations as well as a breach of their fiduciary duty to protect and preserve the rights of their insured, and as a result has proximately caused the damages and losses described herein.

WHEREFORE, Shine prays for damages against AIG et al. for all damages contemplated by the insurance contract, attorney fees, consequential damages, punitive damages, plus interest thereon and the costs of this action.

## COUNT II
## BAD FAITH

COMES NOW Plaintiff Shine and for cause of action against the Defendants, AIG and Chartis, states the following:

28. That Plaintiff re-pleads all allegations contained in paragraphs 19 through 27 of Count I as though fully set forth herein.

29. That AIG, et al., had a fiduciary relationship as a result of a first party contractual relationship between the Plaintiff and Defendants.

30. That neither the limited investigation nor the facts acquired during the course of AIG's investigation supported their inferences and speculation leading to the denial of coverage for attorney's fees and penalties

31. That there was no basis to exclude coverage for civil penalties on the basis that they were criminal, or that the event was intentional. Furthermore, there was no factual basis to allege that the "clean up costs" reflected a voluntary project assumed by Shine that did not involve the reclamation of the materials allegedly emanating from Shine's property.

32. That subsequent to the issuing of the original opinion by an AIG representative, Doynow, a second investigator was appointed by AIG to review the initial denial. That repeated

demands were made on behalf of Shine for further clarification to allow Shine to specifically address the unsupported inferences and conclusions drawn in the original letter of partial denial. That requests were made with respect to the issue of AIG's understanding of the reservation of rights communicated to Shine with respect to clean up costs. AIG was further given opportunities to review federal documents regarding the nature of the clean up costs, including engineering reports, that would clearly establish that all of the work that was performed was limited to the reclamation of "Pete's Pond Park" by removing the contaminants from Shine arising out of the government's claim. That AIG remained committed to their original opinion and refused to take any further actions to remediate the losses incurred by Shine or the invitation by Shine to provide additional evidence or information in the event the reviewing investigator identified the factual basis supporting the denial.

33. That alternately, even if the Court would determine that there was an exclusion for penalty, AIG, et al., clearly issued a "reservation of rights" on the issue of clean up costs at "Pete's Pond Park" and therefore owed a duty to tender a defense to the entire contract of insurance, which they failed to do.

34. That regardless of the coverage issue, AIG, et al., acted in bad faith by abandoning the insured without tendering a defense or providing the cost of defense as required under the terms of the policy.

35. That as a result thereof, Plaintiff Shine incurred legal expense and should be reimbursed by AIG, et al., and AIG acted in bad faith by failing to tender a defense after issuing the reservation of rights statement, and that AIG, et al., intentionally misrepresented or exaggerated statements to deny the coverage under the terms of the policy.

WHEREFORE, Plaintiff Shine prays that judgment be entered against AIG and Chartis to reimburse Shine for all civil penalties, costs of offsite repair to "Pete's Pond Park", all attorney's fees accrued as a result of AIG's failure to defend, as well as any consequential damages or expenses necessary to resolve the litigation, including interest and expert fees, in order to comply with the demands of the USEPA, as well as punitive damages and court costs.

John R. Walker Jr., AT#0008222
For BEECHER, FIELD, WALKER,
MORRIS, HOFFMAN & JOHNSON, P.C.
620 Lafayette Street, PO Box 178
Waterloo, IA 50704
PH: 319/234-1766; FAX: 319/234-1225
Attorneys for Plaintiff