**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

SHINE BROS. CORP.,

                Plaintiff,

vs.

AMERICAN INTERNATIONAL
GROUP, INC., CHARTIS INC., and
CHARTIS SPECIALTY INSURANCE
COMPANY,

            Defendants.

No. C 14-4120-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS AND PLAINTIFF'S
REQUEST FOR JURISDICTIONAL
DISCOVERY**

------------------------------

**TABLE OF CONTENTS**

I.     *FACTUAL AND PROCEDURAL BACKGROUNDS* ................................ 3

II.    *FACTS RELATING SOLELY TO PERSONAL JURISDICTION
OVER AIG, INC. AND AIG PROPERTY CASUALTY* ............................ 5

III.   *ISSUES* ................................................................................. 7

IV.   *DISCUSSION* .......................................................................... 8

      A.     *Rule 12(b)(2) Motion: Lack of Personal Jurisdiction* ....................... 8

               1.     *Arguments of the Parties* ............................................. 11

               2.     *Analysis of Rule 12(b)(2) Motion* ................................... 17

                       a.     *General Personal Jurisdiction: Nature and
Quality of Contacts with Iowa and Quantity of
Contacts with Iowa* ............................................. 18

                       b.     *Specific Personal Jurisdiction: Nature and
Quality of Contacts with Iowa and the
Relationship Between Shine's Causes of Action
and Contacts of AIG, Inc. and AIG Property
Casualty* ......................................................... 25

        *c.*      *The Last Two "Secondary Factors": Iowa's*      *Interest in Providing a Forum and*      *Convenience of the Parties* ............................................ 32
   *B.*     *Rule 12(b)(6) Motion: Failure to State a Claim* ............................ 33
       *1.*     *Arguments of the Parties* ............................................... 36
       *2.*     *Analysis of Rule 12(b)(6) Motion* ................................... 38
   *C.*     *Jurisdictional Discovery* ......................................................... 39
       *1.*     *Arguments of the Parties* ............................................... 41
       *2.*     *Analysis of Jurisdictional Discovery* ............................... 44
*V.*     *CONCLUSION* ............................................................................... 45

Plaintiff, an industrial corporation in Iowa, filed suit in Iowa state court, alleging that out-of-state defendants, two corporate entities and one indirect subsidiary of those entities, breached their contractual obligations and fiduciary duties, and acted in bad faith with respect to a pollution liability insurance policy. More specifically, the plaintiff alleges that the defendants' insurance policy provided coverage for the plaintiff's defense costs, fines, and clean-up costs in relation to a notice, dated March 31, 2014, from The United States Environmental Protection Agency (USEPA) as to alleged contaminants that flowed from the plaintiff's facility in Spencer, Iowa, into a nearby pond of a public park. The defendants did not provide insurance coverage to the plaintiff and refused to defend the plaintiff as to the alleged environmental events that occurred at the plaintiff's facility. After removal to federal court, the defendants moved for dismissal of the plaintiff's claims for lack of personal jurisdiction and failure to state a claim. The merits of the plaintiff's claims are not before me at this time. Rather, I must resolve, *inter alia*, whether the plaintiff has made a *prima facie* showing that the two named corporate defendants had sufficient minimum contacts with Iowa to satisfy the exercise of specific or general personal jurisdiction thereby overcoming the defendants' 12(b)(2) motion. In addition, I confront whether the plaintiff defeats the defendants' 12(b)(6) motion to

dismiss, and whether to permit the plaintiff to conduct limited discovery confined to the issue of personal jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUNDS

The following facts are drawn from AIG Claims, Inc.'s letter to the plaintiff denying insurance coverage, the parties' memorandums, the defendants' declarations, and the plaintiff's state law petition.[1] Plaintiff Shine Bros. Corp. (Shine) operates an industrial facility in the city of Spencer, Iowa. At that facility, Shine purchases, recycles, and sells scrap metal, mostly from wire chopping and auto shredding, and also sells other products. The corporation engages in these activities near a public park, called Pete's Pond Park. The park includes a man-made body of water that flows into the Little Sioux River.[2] Defendants, American International Group, Inc. (AIG, Inc.), Chartis Inc. n/k/a AIG Property Casualty Inc. (AIG Property Casualty), and Chartis Specialty Insurance Company n/k/a Specialty Insurance Company (AIG Specialty),[3] provided insurance

---

[1] When considering a party's motion to dismiss for lack of personal jurisdiction, I may consider the factual background as set forth in Shine's pleading, the affidavits and exhibits presented with the defendants' 12(b)(2) motion, and the plaintiff's memorandum in opposition to it. *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474–75 (8th Cir. 2012).

[2] The Little Sioux River is "navigable water" as defined by the Clean Water Act. *See* 333 U.S.C. §§ 1311, 1342. Plaintiff's Petition At Law (docket no. 9–1), 1.

[3] The defendants assert that the insurance policies were issued solely by defendant AIG Specialty. Defendants' Motion To Dismiss (docket no. 9), 1. The defendants argue that Shine conflates the defendants by referring to all of the defendants collectively.

coverage to Shine for certain environmental events at Shine's facility from July 27, 2006 through July 27, 2015.[4]

In March of 2014, USEPA filed a Complaint against Shine for violating the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act, 33 U.S.C. §§ 1311 and 1342. This is because, according to the USEPA, there were contaminants from Shine's facility found in Pete's Pond Park as a result of storm water, melting snow, surface drainage, and run off water discharged from Shine's facility. After notifying its insurer, Shine received a letter in Iowa, dated June 18, 2014, indicating that coverage for the EPA Complaint was denied. AIG Claims, Inc. sent Shine the letter that denied insurance coverage, and the letter displayed AIG's logo. *See* Plaintiff's Memorandum of Authorities in Support of its Resistance (docket no. 12–1), 2, 10.

On November 13, 2014, Shine filed a petition in the Iowa District Court for Clay County against the defendants, AIG, Inc., AIG Property Casualty, and AIG Specialty. *See* Plaintiff's Memorandum of Authorities in Support of its Resistance at 1; *see also* Plaintiff's Petition At Law at 1. In its state law petition, Shine seeks relief from the

---

[4] Shine's pollution insurance coverage has been periodically extended since July 27, 2006. Plaintiff's Petition At Law at 1–2. On July 27, 2006, Shine secured a pollution liability policy from AIG, which provided Shine with insurance coverage for environmental events resulting in certain claims, clean-up costs, property damages, and losses as defined by the insurance contract. *Id.* The initial policy was set to last from July 27, 2006, to July 27, 2009. *Id.* The policy was, however, extended for an additional period to begin on July 27, 2009, and end on July 27, 2012. *Id.* at 2. The policy under consideration now was issued by AIG Specialty on July 27, 2012, and the termination date was extended to July 27, 2015. *Id.* Shine received the notice from USEPA, which threatened to file legal action, "approximately 20 months into the final policy period, which continued through the year 2015." *Id.* According to Shine's state law petition, "the USEPA requested payment of a civil penalty, called for an action plan, and required Shine to assume the financial cost of removing the offending materials from 'Pete's Pond Park' that the government identified as having migrated from the Shine facility." *Id.*

defendants for their alleged breach of contract and fiduciary duty and bad faith as to insurance coverage under a policy issued by AIG Specialty to Shine. Plaintiff's Petition At Law at 3–5.

On December 15, 2014, the defendants filed a Notice of Removal of Shine's action from the Iowa District Court for Clay County to the United States District Court for the Northern District of Iowa, Western Division (docket no. 2). After the case was removed to federal court, on January 16, 2015, the defendants filed a motion to dismiss Shine's state law petition pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' Motion To Dismiss at 1. Although the defendants concede that AIG Specialty, the issuing insurance company, is "a proper defendant," the defendants take issue with Shine's inclusion of the other AIG corporate entities in Shine's state law petition, including AIG, Inc. and AIG Property Casualty. Defendants' Memorandum In Support Of Their Motion To Dismiss at 2–3.

## II. FACTS RELATING SOLELY TO PERSONAL JURISDICTION OVER AIG, INC. AND AIG PROPERTY CASUALTY

The defendants supplied declarations in support of their motion to dismiss Shine's state law petition. *See* Patrick Burke's Declaration (docket no. 9–2); *see also* Jihan Nelson's Declaration (docket no. 9–3). Patrick Burke, an assistant corporate secretary and an authorized representative of AIG, Inc., is allegedly "familiar with the nature of AIG, Inc.'s business and corporate structure." Patrick Burke's Declaration at 1. Jihan Nelson, a paralegal in the Corporate Governance and Transactions Group for AIG Property Casualty, is also allegedly "familiar with the nature of AIG Property Casualty's business and corporate structure." Jihan Nelson's Declaration at 1. I will briefly summarize the pertinent facts provided in Burke's and Nelson's declarations.

According to Burke and Nelson, AIG, Inc. and AIG Property Casualty are "corporation[s] duly organized and existing under the laws" of Delaware and their principal places of business are in New York, New York. Patrick Burke's Declaration at 1; Jihan Nelson's Declaration at 1. These entities have no offices or employees in Iowa. They do not own or lease properties in Iowa. The entities do not conduct business in Iowa, and neither entity is registered to do business in Iowa. Rather, both AIG, Inc. and AIG Property Casualty are "holding compan[ies]" and "corporate parent[s] to numerous subsidiary corporations." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 2. Both companies have "numerous affiliates and subsidiaries, including insurance company subsidiaries and affiliates that write property, casualty, marine, life, worker's compensation, and other liens of insurance and collectively do business in numerous countries and jurisdictions." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 2. Nelson's declaration provides that AIG Property Casualty "does not advertise," "file business and occupation tax returns" in Iowa, or "exercise control over the operations of any business in the State of Iowa." Jihan Nelson's Declaration at 2. In contrast, Burke's declaration is silent on these matters with regard to AIG, Inc. Patrick Burke's Declaration at 2.

AIG, Inc. and AIG Property Casualty do not "sell, write or issue primary or excess insurance or reinsurance, either on [their] own account[s] or for any insurer, including but not limited to [their] indirect subsidiary, [AIG Specialty]." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 2. Because neither entity "sell[s], write[s], issue[s] or reinsure[s] primary or excess insurance policies," Burke and Nelson assert that the entities "could not have sold, written, issued or reinsured any policy which is the subject of the above-captioned litigation." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 2. Based on these facts, according to Burke and Nelson, neither entity was "involved in any way in the administration or handling of any claim which is

6

the subject of the above-captioned litigation." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 2.

Finally, Burke's and Nelson's declarations provide that AIG, Inc. and AIG Property Casualty maintain their own corporate records, "separate and distinct" from their various subsidiaries, including AIG Specialty. Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 3. AIG, Inc. and AIG Property Casualty also have their "own separate Board of Directors, members, managers, partners and corporate officers." Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 3. The declarations further provide that the direct and indirect subsidiaries of AIG, Inc. and AIG Property Casualty are "separate and distinct" and those subsidiary corporations maintain their "own corporate formalities necessary for their separate corporate existence, including separate bylaws, separate corporate books and records, a separate Board of Directors, and generally [they] [follow] other corporate requirements separately." Patrick Burke's Declaration at 2–3; Jihan Nelson's Declaration at 3.

### III.   ISSUES

I address three issues in this Memorandum Opinion and Order: (1) Whether this Court has general or specific personal jurisdiction over AIG, Inc. and AIG Property Casualty to overcome the defendants' Rule 12(b)(2) motion; (2) Whether Shine has stated a claim against AIG, Inc. and AIG Property Casualty to survive the defendants' Rule 12(b)(6) motion; and (3) Whether Shine should be permitted to conduct jurisdictional discovery before I make a final ruling on the defendants' motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

## IV.   DISCUSSION

### A. Rule 12(b)(2) Motion: Lack of Personal Jurisdiction

The defendants challenge this Court's personal jurisdiction over AIG, Inc. and AIG Property Casualty. Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "lack of personal jurisdiction." FED. R. CIV. P. 12(B)(6). As the Eighth Circuit Court of Appeals has explained,

> "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, --- U.S. ---, 131 S.Ct. 472, 178 L.Ed.2d 289 (2010). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* Its "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted).

*Dairy Farmers of Am., Inc.*, 702 F.3d at 474–75. Although I may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" *prima facie* showing of personal jurisdiction, and I "must view the evidence in the light most favorable to the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 581-82 (8th Cir. 2011). The Eighth Circuit Court of Appeals reviews *de novo* a district court's order granting a dismissal pursuant to Rule 12(b)(2). *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010).

The exercise of personal jurisdiction is only permissible to the extent that it is "permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). As Iowa's Supreme Court explained, when interpreting Iowa's long-arm statute, codified in Iowa Rule of Civil Procedure 1.306,[5] the statue "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Florida Asset Financing Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (citing *Hodges v. Hodges*, 572 N.W.2d 549, 552 (Iowa 1997)). Therefore, I must determine whether personal jurisdiction over AIG, Inc. and AIG Property Casualty comport with constitutional due process restrictions. *See Wells Dairy, Inc.*, 607 F.3d at 518; *see also Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (noting that when a long-arm statute is broadly construed, "the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"Due process requires that a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers v. Casino Queen, Inc.*, 689

---

[5] Iowa's jurisdictional statute provides in relevant part:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

IOWA R. CIV. P. 1.306. "Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits." *Wells Dairy, Inc. v. Food Movers Intern., Inc.*, 566 F.Supp.2d 933, 945 n.3 (N.D. Iowa 2008).

F.3d 904, 911 (8th Cir.2012) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  More specifically,

> Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play and substantial justice." [*Int'l Shoe Co.*, 326 U.S.] at 316, 66 S.Ct. 154, 90 L.Ed. 95 (internal quotation marks and citation omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations omitted).
>
> We developed a five-factor test to evaluate whether a defendant's actions are sufficient to support personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the state's] interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *See, e.g.*, *Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir.1985) (noting that the first three factors are of primary importance and the last two of secondary importance).

*Myers*, 689 F.3d at 911.

"Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)).  "The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *VGM Fin. Servs. v. Singh*, 708 F.Supp.2d 822, 830–31 (N.D.

Iowa 2010) (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) in turn citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984)); *see also Dever*, 380 F.3d at 1073 ("The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."). "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc.*, 646 F.3d at 593 (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) in turn quoting *Bell Paper Box, Inc.*, 22 F.3d at 819). In the five-factor minimum contact analysis discussed above, "[t]he third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. According to the Eighth Circuit Court of Appeals, this is so, because "[s]pecific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912. "Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Both "general" and "specific" personal jurisdiction are at issue, here, because Shine asserts that, under both theories, this case is allowed to proceed. After I summarize the parties' arguments, below, I will apply the above standards and analyze the defendants' Motion to Dismiss pursuant to Rule 12(b)(2).

### 1. *Arguments of the Parties*

The defendants contend that Shine's pleading is "fatally deficient" in naming AIG, Inc. and AIG Property Casualty as defendants because they "lack the minimum contacts with Iowa necessary to bring them within the state's jurisdiction." *See* Defendants'

Memorandum In Support Of Their Motion To Dismiss at 2, 6.[6]   The defendants argue
that it would "be inconsistent with the Due Process Clause and traditional notions of fair
play and substantial justice" to subject AIG, Inc. and AIG Property Casualty to the
jurisdiction of this Court because the two entities "lack minimum contacts with Iowa."
Defendants' Motion To Dismiss at 2.

Advancing their jurisdictional argument, the defendants make the case that this
Court lacks "general jurisdiction" over AIG, Inc. and AIG Property Casualty because
neither entity has "such 'continuous and systematic contacts' with Iowa so as to render
them essentially at home in Iowa." Defendants' Memorandum In Support of Their
Motion To Dismiss at 8 (citing *Dever*, 380 F.3d at 1073; *Daimler AG v. Bauman*, 134
S.Ct. 746, 755 (2014)).  Rather, the entities are Delaware corporations and their principle
places of business are in New York.  *Id.*  The entities are holding companies, which
invest in subsidiaries, such as AIG Specialty; the entities are not insurance companies
and do not issue insurance policies in any state.  *Id.*  The entities do not have "employees,
offices, agents, real estate, inventory, or personal property in Iowa." *Id.*  Neither entity
is registered to do business in Iowa, nor do they conduct any business in Iowa.  *Id.*

The defendants also dispute Shine's contention that AIG's website confers general
personal jurisdiction over AIG, Inc. or AIG Property Casualty.[7]  Defendants' Reply
Memorandum In Support Of Their Motion To Dismiss (docket no. 13), 2.  Citing to
*VGM Fin. Servs.*, 708 F. Supp.2d 822, the defendants argue that "[a] website cannot
provide general jurisdiction over an entity unless the nature and quality of the website is

---

[6] In addition to the defendants' memorandum in support of their motion, which was
incorporated by reference by the defendants, also attached to the defendants' motion to
dismiss is Exhibit A (the state court petition filed by Shine), Exhibit B (a declaration by
Patrick Burke), and Exhibit C (a declaration by Jihan Nelson).

[7] AIG's web address is as follows: http://www.aig.com.

such that it establishes continuous and substantial contacts with the forum state." *Id.*
According to the defendants, this case involves a "passive," not an "active," website,
which "provides information about services available from AIG, Inc.'s subsidiaries
around the globe, and generally describes the nature of the businesses of these
subsidiaries." *Id.* at 3. This "passive" website does not establish that the defendants
"are essentially 'at home' wherever the website is viewable" so to confer jurisdiction
over them. *Id.* The defendants also argue that the quotations cited to by Shine on AIG's
website do not subject the defendants to general personal jurisdiction in Iowa as the quotes
are not directed at Iowa or Iowa residents. Instead, "[the quotations] mention 'customers
around the globe,' discuss worldwide operations, and describe insurance licensing
requirements around the nation.'" *Id.* at 3–4.

In addition, the defendants make the case that this Court lacks "specific
jurisdiction" over AIG, Inc. and AIG Property Casualty because the two entities did not
"purposefully direct[ ] any activities toward Iowa," and Shine's claims do not "arise from
any activities of AIG, Inc. or AIG Property Casualty." Defendants' Memorandum In
Support of Their Motion To Dismiss at 9. The two entities, the defendants argue, have
zero contacts with Iowa. Shine now seeks relief based on an insurance policy "issued by
AIG Specialty," not AIG, Inc. or AIG Property Casualty. *Id.* Citing to *Dever*, 380 F.3d
at 1073–74, the defendants further contend that the five-factors for evaluating personal
jurisdiction "demonstrate that [AIG, Inc. and AIG Property Casualty] cannot be subject
to jurisdiction in an Iowa court." *Id.*

In response to Shine's Resistance Memorandum, the defendants focus on the single
letter from "AIG Claim, Inc.," which denied insurance coverage to Shine. Defendants'
Reply Memorandum In Support Of Their Motion To Dismiss at 4. In doing so, the
defendants argue that the single letter does not confer specific personal jurisdiction over
AIG, Inc. or AIG Property Casualty for two reasons. First, the letter was sent by "AIG

Claims, Inc." on behalf of AIG Specialty, which is consistent with the defendants' original motion, indicating that neither entity issues insurance policies or decides insurance claims. *Id.* Second, the letter sent by AIG Claims, Inc. "cannot support that [Shine's] causes of action arise out of the defendants' particular activities in the forum, because the letter is not attributable to either defendant." *Id.* (citing *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)). For the above reasons, the defendants assert that personal jurisdiction in Iowa is not established by AIG's website or by AIG Claims, Inc.'s single letter to Shine.

Lastly, according to the defendants, this Court is not permitted to exercise personal jurisdiction over AIG, Inc. and AIG Property Casualty based on AIG Specialty's contacts with Iowa. "Personal jurisdiction can be based on the activities of a nonresident corporation's in-state subsidiary only if the parent 'so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego,'" writes the defendants. Defendants' Memorandum In Support of Their Motion To Dismiss at 10 (quoting *Viasystems, Inc.*, 646 F.3d at 596). The defendants argue that Shine did not (and cannot) allege AIG Specialty acted as AIG, Inc.'s or AIG Property Casualty's "alter ego" so that "AIG Specialty's action can be attributed to them." *Id.* After highlighting facts to further their argument that AIG Inc., AIG Property Casualty, and AIG Specialty are each "separate and distinct corporate entities," the defendants request that I dismiss Shine's petition against AIG, Inc. and AIG Property Casualty under Rule 12(b)(2) with prejudice.

In response to the defendants' motion, Shine contends that it "can make a prime [sic] facie showing of the Court's personal jurisdiction over" AIG, Inc., and AIG Property Casualty. Plaintiff's Resistance (docket no. 12), 1. In furtherance of this contention, Shine asserts that, pursuant to Iowa's long arm statute, AIG, Inc. and AIG

Property Casualty have the necessary minimum contacts with Iowa. Plaintiff's Memorandum of Authorities in Support of its Resistance at 3. "As the Defendants point out, Iowa Rule of Civil Procedure 1.306, Iowa's long arm statute, 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution.'" *Id.* (citing Defendants' Memorandum In Support Of Their Motion To Dismiss at 7). Following recitation of the five-part test for measuring a defendant's contacts with a forum state, Shine makes the case that it "may establish jurisdiction over AIG, Inc. and [AIG Property Casualty] by general or specific jurisdiction[.]" *Id.*

As to "general jurisdiction," Shine contends that "there are sufficient facts to support a 'reasonable inference' that AIG, Inc. and [AIG Property Casualty] can be subjected to general jurisdiction within the state of Iowa." *Id.* at 4 (citing *Dever*, 380 F.3d at 1072). This is because AIG has "continuous contacts" with Iowa and residents of Iowa through its website. *Id.* Several facts supporting this contention also suggest that AIG Property Casualty and AIG Specialty operate under the "AIG umbrella" by selling and distributing insurance products in Iowa. *Id.* at 4–5. For example, "[e]ach page of [AIG's] website displays the AIG logo"; a webpage entitled "AIG at a Glance" provides, "We're the world's largest insurance organization, with more than 88 million customers around the globe"; the webpage, which gives information on the commercial insurance offered by AIG assets, notes that "the claims operation that underpins every AIG insurance policy is one of our greatest strengths"; various webpages refer only to "AIG," such as the "Claims" webpage, which asserts, "[w]e offer dedicated resources to ensure consistency of claims handling, effective account stewardship, and winning claims strategies"; AIG's licensing and appointment requirements webpage includes "a chart of the license requirements for entities and individuals in each of the fifty states, including Iowa"; and an environmental video referring to "the environmental division" at AIG Property Casualty also concludes with the AIG logo. *Id.*

In addition, as to "specific jurisdiction," Shine argues that the facts of this case are "sufficient to support a 'reasonable inference'" that AIG, Inc. and AIG Property Casualty are subject to specific jurisdiction in Iowa. *Id.* at 5. According to Shine, AIG "purposely directed its activities at [a] forum resident," by considering the EPA's Complaint, and sending a letter to Shine, which denied insurance coverage.[8] *Id.* The letter sent to Shine regarding the Complaint was sent from "AIG Claims, Inc.," not AIG

---

[8] Shine does not argue that AIG Inc.'s website and Internet contacts with Iowa confer "specific" personal jurisdiction over AIG, Inc. and AIG Property Casualty. *See* Plaintiff's Memorandum of Authorities in Support of its Resistance at 5. However, Shine does cite to case law from other jurisdictions, referred to in *Lakin*, 348 F.3d at 710, which "held that a website can provide sufficient contacts to invoke specific jurisdiction in certain cases." *Id.* at 6. It is worth noting that I have addressed in some detail whether "specific" personal jurisdiction can be based on Internet activity. *See, e.g.*, *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F.Supp.2d 1017, 1026, 1035 (N.D. Iowa 2013) (finding defendant seller's purported Internet contacts with the forum state through its website were insufficient to establish specific personal jurisdiction in Iowa). The Eighth Circuit Court of Appeals has also addressed whether "specific" personal jurisdiction can be established based on Internet contacts with a forum state. *See, e.g.*, *Johnson*, 614 F.3d at 797 (finding defendant's Internet contacts—posting defamatory statements on www.ComplaintsBoard.com and using a trademark on www.BoutiqueKittens.com—did not confer specific personal jurisdiction over defendant cat breeder, and also noting that "[t]he website's [(www.ComplaintBoards.com)] accessibility in Missouri alone is insufficient to confer [specific] personal jurisdiction."); *see also Pangaea, Inc. v. Flying Burrito, LLC,* 647 F.3d 741, 747 (8th Cir. 2011) (holding that merely maintaining a website advertising the defendants' Iowa restaurant, which could be viewed by potential customers in the forum state of Arkansas, was insufficient to confer specific personal jurisdiction over the defendants, an Iowa citizen and an Iowa limited liability company.). Other federal district courts have also addressed the matter. *See, e.g.*, *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. Civ.A. 302CV1712G, 2003 WL 292162, *6 (N.D. Tex. Feb.7, 2003) (finding out-of-state defendant company's Internet website fell "within the middle range of the *Zippo* spectrum" and no specific jurisdiction over out-of-state defendant company because its "web-based contacts simply fail[ed] to paint the picture of a significantly commercial website that [wa]s visited regularly by Texas residents.").

Specialty, and the general "AIG" logo was displayed on the letterhead. In closing, Shine contends that "[b]ecause the present litigation 'results from injuries arising out of, or relating to' the positions taken by AIG in this letter, the requirements of due process are satisfied and the Court can exercise specific personal jurisdiction over the Defendants." Plaintiff's Memorandum of Authorities in Support of its Resistance at 5 (quoting *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 614 (8th Cir. 1998)).

### 2. *Analysis of Rule 12(b)(2) Motion*

As discussed above, the defendants assert that this Court lacks personal jurisdiction over AIG, Inc. and AIG Property Casualty. Shine disputes that contention. The personal jurisdiction issue, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, rests on two sub-issues: first, whether the Internet contacts made by AIG's website confer *"general" or "all-purpose" personal jurisdiction* over AIG, Inc. and AIG Property Casualty in Iowa; and, second, whether AIG Claim, Inc.'s letter denying insurance coverage to Shine confers *"specific" or "case-linked" personal jurisdiction* over AIG, Inc. and AIG Property Casualty in Iowa. *See Walden v. Fiore*, 134 S.Ct. 1115, 1126 n.6 (2014). In addressing the two different theories for personal jurisdiction, I must apply the five-factor test for measuring "minimum contacts" established by the Eighth Circuit Court of Appeals to determine if due process is satisfied by the exercise of personal jurisdiction. Specifically, I will consider these five factors and, as instructed, give the first three factors primary importance:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir.1991); *see also Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors.");

*Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) ("Factors one through three are primary."); *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("The last two factors are considered less important and are not determinative.") (citing *Land–O–Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir.1983)).

### a.     General Personal Jurisdiction: Nature and Quality of Contacts with Iowa and Quantity of Contacts with Iowa

In order for AIG, Inc.'s Internet contacts with the State of Iowa to confer general personal jurisdiction over AIG, Inc. and AIG Property Casualty, the Internet contacts must be "continuous and systematic" with Iowa, *Johnson*, 614 F.3d at 795, "[so] as to render them essentially at home in the forum State." *Goodyear Dunlop Tire Operations v. Brown*, 131 S.Ct. 2846, 2851 (2011); *see also Daimler AG*, 134 S.Ct. at 754, 761. "Like specific jurisdiction, general jurisdiction can only be asserted insofar as it is authorized by state law and permitted by the Due Process Clause." *Viasystems, Inc.*, 646 F.3d at 595 (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). However, "[b]ecause [general jurisdiction] extends to causes of action unrelated to the defendant's contacts with the forum state, general jurisdiction over a defendant is subject to a higher due-process threshold." *Id*. Shine contends that AIG, Inc. and AIG Property Casualty are subject to general personal jurisdiction based solely on AIG, Inc.'s website, http://www.aig.com, and that website's Internet contacts with Iowa.

The Eighth Circuit Court of Appeals in *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir.2003) addressed the issue of whether a website provided sufficient contacts with a forum state to support the exercise of *general* personal jurisdiction.  In doing so, the Eighth Circuit Court of Appeals recognized that many of the courts that addressed whether a website can provide sufficient contacts to invoke *specific* personal jurisdiction adopted the "sliding scale" approach pioneered in *Zippo Mfg. Co. v.*

*Zippo.com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Penn. 1997).[9]  *Id.*  The Eighth Circuit Court of Appeals agreed with its sister circuits, and the appellate court opined that the *Zippo* test "is an appropriate approach in cases of specific jurisdiction—i.e., ones in which we need only find 'minimum contacts.'"  *Id.*  Then, the appellate court noted that

---

[9] The District Court for the Western District of Pennsylvania created three categories of websites and described the *Zippo* "sliding scale" analytical framework in this way:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  *E.g. Bensusan Restaurant Corp., v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996).  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo. 1996).

*Zippo Mfg. Co.*, 952 F.Supp. at 1124.  To put it more simply, in the words of my colleague, Senior District Judge James E. Gritzner of the United States District Court for the Southern District of Iowa, "The *Zippo* test analyzes the nature and quality of a website by determining whether a website is 'interactive,' 'does business,' or is merely 'passive.'"  *Grandstaff v. Hiner Equipment, L.L.C.*, 56 F.Supp.3d 1003, 1011 (S.D. Iowa 2014) (quoting *Lakin*, 348 F.3d at 710–11).

it was "presented with a case of general personal jurisdiction—i.e., one in which we must find 'substantial and continuous' contacts." *Id.*

Furthermore, circuits have split on whether to adopt the *Zippo* test when addressing a case of general jurisdiction. *Id.* After recognizing that split among the circuit courts, the Eighth Circuit Court of Appeals noted its agreement with "the courts that do not apply the 'sliding scale' presumptively for cases of general jurisdiction." *Id.* While the Eighth Circuit Court of Appeals "believe[s] that a consideration of the 'nature and quality' of a Web site and a determination of 'whether it is 'interactive,' 'does business,' or is merely 'passive' is an important factor in [the Court's] analysis," the Court also considers "a variety of factors—depending on the circumstance—in a personal jurisdiction analysis." *Id.* (citing *Aftanase v. Econ. Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (creating the five factors to consider for personal jurisdiction and applying them depending on their relevance to the case)).

Analyzing *Lakin*, another colleague of mine, Chief Judge Linda R. Reade of the United States District Court for the Northern District of Iowa, rightly explained that the *Zippo* test is "just the starting point in assessing a website's impact on general jurisdiction analysis." *VGM Fin. Servs.*, 708 F. Supp.2d at 838.[10] Chief Judge Reade continued: "In addition to the nature and quality of a website (as captured by the *Zippo* test), the Eighth Circuit Court of Appeals held that it was also necessary to weigh the *quantity* of the defendant's contacts via its website." *Id.* To support the application of this advanced analytical framework, the Eighth Circuit Court of Appeals acknowledged that, under the *Zippo* test, a website may be "very interactive," but also "have no quantity of contacts." *Lakin*, 348 F.3d at 712. Therefore, although the contacts may be "continuous," they

---

[10] In *VGM Fin. Servs.*, 708 F.Supp.2d at 839, Chief Judge Reade was convinced that, without more, a third-party defendant's listing of six Iowa medical practitioners on its website was insufficient to confer personal jurisdiction over that defendant in Iowa.

would not be "*substantial*," which, the Eighth Circuit Court of Appeals asserts, "is untenable in a general jurisdiction analysis." *Id.*

Four years after *VGM Fin. Servs.*, in *Grandstaff*, 56 F.Supp.3d at 1010–11, Senior District Judge James E. Gritzner of my sister district echoed Chief Judge Reade's interpretation of *Lakin*. Judge Gritzner succinctly and accurately put forth the same legal standard to decide whether a defendant's Internet contacts with a forum state suffice to establish general personal jurisdiction over that defendant:

> When presented with a case of general jurisdiction, the Eighth Circuit first applies the sliding-scale analysis developed in [*Zippo Mfg. Co.*, 952 F.Supp. at 1124], to determine the sufficiency of the website's contacts with forum residents, and then looks to the quantity of those contacts with the residents of the forum state. [*Lakin*, 348 F.3d 704 at 712].

*Id.* In accordance with the above relevant precedent, I consider the nature and quality of AIG, Inc.'s website under the *Zippo* test, and then consider the quantity of AIG, Inc.'s website's contacts with Iowa residents. To assist me in applying this analytical framework, I compare the markedly similar facts of *Grandstaff* to this case.

In *Grandstaff*, Judge Gritzner held that, although the defendant's website (*i.e.*, www.trailersource.us) "is available nationwide," the website "falls on the passive end of the spectrum [of the *Zippo* test]." *Id.* at 1011. This is because "[t]he website primarily supplies users with general information about Trailer Source's business and does not permit customers to have direct contact with Trailer Source or to purchase products directly from the website." *Id.* The website's "Inventory" link also fails to establish that the defendant's website is interactive because that link only directs consumers "to a separate website that contains further information pertaining to Trailer Source's current inventory." *Id.* Consumers are also directed by a link to a credit card application form that "cannot be filled out or submitted to Trailer Source through the website." *Id.* Nor

has that credit card form ever been used by a consumer. Finally, in reaching the holding that the defendant was not subject to general personal jurisdiction in Iowa, Judge Gritzner also highlights the fact that the "record is devoid of any indication of the number of times the website was accessed and utilized by Iowa customers." *Id.*

In regard to the nature and quality of AIG, Inc.'s Internet contacts, the defendants correctly assert that AIG, Inc.'s website "is a passive website that merely provides information about services available from AIG, Inc.'s subsidiaries around the globe, and generally describes the nature of the businesses of these subsidiaries." Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 3. Shine does not put forth any compelling evidence to dispute this assertion. Moreover, there is little evidence in the record to support why AIG, Inc.'s website is "interactive" and not a "passive" website. For example, no evidence is provided as to how AIG, Inc.'s website "does business" or allows customers to contact AIG, Inc. No evidence is provided to support the assertion that AIG's website allows for the direct purchase of insurance. Most notably, no evidence is provided that Iowa residents purchased insurance via AIG, Inc.'s website; contacted AIG, Inc. via the website to enter into a contract with AIG, Inc. or AIG Property Casualty, or any of its subsidiaries; or inquired about the insurance offered by AIG, Inc. by contacting AIG, Inc. via its website.

The quotations from the website further suggest that AIG, Inc.'s website is passive in the nature and quality of the commercial activity on its website. This is because the quotations merely provide information to any visitor of the website, which is accessible worldwide. Shine also does not clarify how AIG Property Casualty, a distinct investment holding company, could be held responsible for the quotations on AIG, Inc.'s website. As I pointed out in *Foreign Candy Co.*, 950 F.Supp.2d at 1028, the Eighth Circuit Court of Appeals in *Viasystems, Inc.*, 646 F.3d at 596, addressed a somewhat different set of circumstances in that the plaintiff asserted general personal jurisdiction over the defendant

on the basis of the web activity of the defendant's purported agent. That decision is still instructive, here, because the Eighth Circuit Court of Appeals recognized the distinction between web activity of a defendant and a third party. The appellate court held,

> Even if [certain] scattered marketing statements could support an inference that the two companies have a legally recognized agency relationship, St. Georgen cannot be held responsible for the statements on www.ebm-papst.com for the simple reason that this website is owned and operated not by St. Georgen, but by its corporate parent, ebm-papst Mulfingen GmbH & Co. KG ("Mulfingen").

*Id.* Shine has not established how the web activity of AIG, Inc. can be attributed to the web activity of AIG Property Casualty or AIG Specialty.

In addition, as to the quantity of AIG, Inc.'s Internet contacts, I am left wondering how many (if any) direct purchases of insurance were made on AIG's website by Iowa residents. *See* Plaintiff's Memorandum of Authorities in Support of Resistance at 4–5. Moreover, as in *Grandstaff*, 56 F.Supp.3d at 1011, the "record is devoid of any indication of the number of times [AIG's] website was accessed and utilized by Iowa customers." In fact, Shine provides little information to me regarding even Shine's interaction (or interactions) with AIG, Inc.'s website to support the argument that the website's contacts with Shine confer general personal jurisdiction over AIG, Inc. and AIG Property Casualty. Accordingly, the site has an insufficient "quantity" of contacts to confer general personal jurisdiction over AIG, Inc. and AIG Property Casualty. *Id.* Thus, applying the analytical framework set forth in *Lakin* and followed recently in *VGM Fin. Servs.* and *Grandstaff*, I find that AIG, Inc.'s website does not provide the kind of "'continuous and systematic'" contacts so as to render AIG, Inc. and AIG Property Casualty "essentially at home" in Iowa and establish general personal jurisdiction over them. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2851; *see also Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, No. 10–CV–100, 2011 WL 1113585,

*6 (N.D. Iowa 2011); *VGM Fin. Services*, 708 F.Supp.2d at 839 ("The court finds that [the defendant's] website falls within the 'passive' category of *Zippo*'s 'sliding scale,'" and that the "quantity" of the defendant's website's contacts with Iowa residents did not support general personal jurisdiction over the defendant).

Even assuming, *arguendo*, that Shine could demonstrate that AIG's website had "interactive capabilities," which were attributable or connected in some way to AIG, Inc. and AIG Property Casualty, those two entities would not necessarily be subjected to general personal jurisdiction. *See Fraserside IP L.L.C. v. Waterweg*, No. C11–3043, 2012 WL 622358, *7 (N.D. Iowa Feb. 24, 2012) (finding that because plaintiff "presented no evidence of any Iowa resident having a membership for [one of the defendant's websites] or even visiting either website [of the defendant]" the plaintiff did not meet its burden of proving that Iowa courts had general jurisdiction over the defendant); *see also VGM Fin. Services*, 708 F.Supp.2d at 841 n.9 ("As courts have noted, it is now common for businesses of all types to have an internet website, typically with interactive capability through which customers can communicate with the business and order products. If general jurisdiction were to be predicated on these types of contacts alone, most businesses would be subject to personal jurisdiction in every forum.") (quoting 16 MOORE'S FEDERAL PRACTICE § 108.44[3])); *Lakin,* 348 F.3d at 712–13 (finding that defendant's interactive website was insufficient to confer general personal jurisdiction without information about the quantity of defendant's contacts with residents of the forum state through the website).

I now turn to consider whether AIG, Inc. and AIG Property Casualty are subject to specific personal jurisdiction in Iowa based on the evidence in the record.

> b.  **Specific Personal Jurisdiction: Nature and Quality of Contacts with Iowa and the Relationship Between Shine's Causes of Action and Contacts of AIG, Inc. and AIG Property Casualty**

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586) in turn citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Romak USA, Inc.*, 384 F.3d at 984.  More exactly, to subject a defendant to "[s]pecific jurisdiction," the defendant's contacts must "'proximately result from actions by the defendant himself that create a substantial connection with the forum state.'"  *Grandstaff*, 56 F.Supp.3d at 1011 (quoting *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) in turn quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003)).  "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *Id.* at 1011 (citing *Helicopteros*, 466 U.S. at 417).

"[W]hen specific jurisdiction is being alleged, *the quantity of contacts is not determinative*" because a single contact with the forum state can give rise to specific jurisdiction.  *AmerUS Group Co. v. Ameris Bancorp*, No. 4:06-cv-00110, 2006 WL 1452808, *9 (S.D. Iowa 2006) (emphasis added); *see also Burger King Corp.*, 471 U.S. at 490 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))).  For that reason, when deciding whether specific jurisdiction exists over a defendant, the Eighth Circuit Court of Appeals instructs me to consider "[a]t a minimum . . . the last two of the primary factors—the nature and quality of the contacts, and [their]

source and connection to the cause of action." *Coen*, 509 F.3d at 905 (quoting *Lakin*, 348 F.3d at 712).

The recent United States Supreme Court decision, *Walden v. Fiore*, 134 S.Ct. at 1126, provides guidance in analyzing the specific personal jurisdiction issue in this case.[11] There, a defendant Drug Enforcement Administration (DEA) agent searched and seized $97,000 in cash from the airline-passenger plaintiffs at an airport in Atlanta, Georgia, before the plaintiffs boarded their connecting flight to Las Vegas, Nevada. *Walden*, 134 S.Ct. at 1119. Although the plaintiffs insisted that the cash was their gambling bank and winnings from San Juan, Puerto Rico, the agent suspected the cash to be affiliated with drug activity and seized the cash. *Id.* After the plaintiffs returned to their residence in Nevada, their cash remained in federal custody. *Id.* Later, the DEA returned the plaintiffs' funds, and the plaintiffs filed a *Bivens* action against the defendant DEA agent in the federal district court in Nevada. *Id.* at 1120. Ultimately, the United States Supreme Court held that the defendant "lack[ed] the 'minimal contacts' with [the forum state] that are a prerequisite to the exercise of [specific personal] jurisdiction over him," despite the defendant's knowledge that his allegedly tortious conduct would delay the return of funds to the plaintiffs who had significant connections with Nevada. *Id.* at 1124 (quoting *Hanson*, 357 U.S. at 251).

---

[11] The Supreme Court's opinion in *Walden* focused on an individual defendant, not a corporate defendant. However, *Walden* seems promising for out-of-state businesses in future litigation because it limits the scope of specific personal jurisdiction. *See, e.g.*, *Fastpath, Inc.*, 760 F.3d at 823 (finding *Walden* "instructive"; applying *Walden* in the context of an Iowa corporation bringing an action against a California corporation for breach of a mutual confidentiality agreement where plaintiff corporation alleged defendant corporation was subject to specific jurisdiction in Iowa; and affirming district court's holding that defendant corporation's forum contacts with Iowa, which consisted of "some emails and phone calls" to the plaintiff corporation in Iowa, were insufficient to establish personal jurisdiction over the defendant corporation).

In reaching its decision, the Supreme Court explained that '"[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"' *Id.* at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) in turn quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection with the forum State*." *Id.* (emphasis added). The Supreme Court clarified that the "substantial connection" must arise out of: (1) "contacts that the 'defendant *himself*' creates with the forum State"; and (2) the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (internal quotations and citations omitted); *see also Gale v. Smith & Nephew P.L.C.*, No. 12 CV 3614, 2015 WL 328127, *3 (S.D. New York 2015). Additionally, the Supreme Court reasoned that the defendant did not form any relevant jurisdictional contacts with Nevada because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way," wrote Justice Clarence Thomas. *Id.* at 1125. The plaintiffs' "claimed injury" in Nevada failed to "evince a connection between [the defendant] and Nevada." *Id.*

In this case, with respect to the nature and quality of the contacts by AIG, Inc. and AIG Property Casualty with the forum state, Iowa, neither defendant seems to have had any relevant jurisdictional contacts.[12] Shine's primary support for specific personal jurisdiction is a single letter sent to Shine from AIG Claims, Inc., dated June 18, 2014.

---

[12] Above I discussed the nature and quality of AIG Inc.'s website's contacts with residents of Iowa and analyzed whether those contacts established general personal jurisdiction.

*See* Plaintiff's Memorandum of Authorities in Support of its Resistance at 5, 10. Shine's argument is untenable. The letter does not suffice. Although it is true that the letter denied insurance coverage to Shine and gave rise to the present litigation, AIG Claims, Inc., an authorized claims handling agent for "AIG Specialty Lines Insurance Company," sent the letter to Shine.[13] The letter was not sent by AIG, Inc. or AIG Property Casualty. The letter was only sent because Shine initiated contact by seeking insurance coverage from its insurance carrier. The record is absent any evidence that AIG, Inc. or AIG Property Casualty exchanged correspondence with Shine as to this dispute, or created other contacts with Iowa.

Even assuming for the sake of argument that AIG, Inc. and AIG Property Casualty had directly sent the one letter to Shine, it is unclear whether that single contact with Shine would confer specific personal jurisdiction over the two entities in Iowa. This is because it has been established by the Eighth Circuit Court of Appeals that "[a]lthough letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) (affirming district court's dismissal for lack of specific personal jurisdiction where non-resident defendant's contacts with forum state consisted of telephone calls, letters, and faxes, and there was a forum choice-of-law provision); *see also Fastpath, Inc.*, 760 F.3d at 824 ("Like the

---

[13] Shine accounts for the fact that AIG Claims, Inc. is the authorized claims handling agent for "AIG Specialty *Lines* Insurance Company." Plaintiff's Memorandum of Authorities in Support of its Resistance at 5 n.1. Shine takes issue with the defendants' assertion that the appropriate defendant is "AIG Specialty." According to Shine, "[i]t is not clear whether or not [AIG Specialty *Lines* Insurance Company] is a different entity than [AIG Specialty], which AIG, Inc. and [AIG Property Casualty] refer to as 'a proper defendant.'" *Id.* at 7. I will address this issue below.

contacts in *Viasystems* and *Digi-Tel*, the emails and phone calls, here, do not create a 'substantial connection' to Iowa sufficient to subject [the defendant corporation] to [specific] personal jurisdiction in the state.").[14] The single letter sent from AIG, Claims Inc. is similar to the insufficient forum contacts of the defendants in *Digi-Tel Holdings,*

---

[14] *See also Porter*, 293 F.3d at 1075 (holding that "numerous" phone calls and letters exchanged by the parties between Connecticut and Missouri were insufficient to satisfy the first two factors of the five factors of the "minimum contacts" standard, and noting that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc.*, 749 F.2d 523, 525 (8th Cir. 1984) ("The district court properly concluded that the use of interstate mail, telephone or banking facilities, standing alone, was insufficient to satisfy the requirements of due process."); *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984) (holding that the defendant's "phone conversations and written correspondence" with the plaintiffs were "not sufficient, under the due process clause, to justify an exercise of personal jurisdiction."); *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 656 (8th Cir. 1982) ("Although the parties did make telephone calls, exchange correspondence, and use banks to arrange payment, 'the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process'" (quoting *Aaron Ferer & Sons v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453 (8th Cir. 1977))); *cf. Wells Dairy, Inc.*, 607 F.3d at 519 (finding district court properly exercised specific jurisdiction over the defendant where "[the defendant] was not physically present in Iowa, [the defendant's] initial contacts with [the plaintiff] took place in California, and [the defendant's] communications with the [plaintiff] Iowa office occurred only via telephone, facsimile, and mail," and noting that those facts "are not dispositive of whether [the defendant's] contacts with Iowa were sufficient to support personal jurisdiction."). A few of the cases I cite in this footnote preceded *Burger King Corp.*, 471 U.S. at 476, where the Supreme Court decided that "[j]urisdiction in these circumstances ("where the defendant 'deliberately' has engaged in significant activities within a State") may not be avoided merely because the defendant did not *physically* enter the forum State." Based on the current record, there are no direct contacts that occurred between AIG, Inc. and AIG Property Casualty by "interstate facilities" with Shine; AIG Claims, Inc., on behalf of AIG Specialty, sent the letter to Shine. Nor did AIG, Inc. or AIG Property Casualty "deliberately" engage in any "significant activities" within Iowa.

*Inc.* and *Fastpath, Inc.* Shine is hard pressed to argue that the single letter created a "substantial connection" to Iowa sufficient to subject AIG, Inc. and AIG Property Casualty to personal jurisdiction in Iowa. *See Digi-Tel Holdings, Inc.*, 89 F.3d at 523; *see also Fastpath Inc.*, 760 F.3d at 824.

In regard to the connection of Shine's cause of action to the letter, I cannot find that it arises from or relates to actions of AIG, Inc. and AIG Property Casualty directed at Iowa. These two entities, which are holding companies and corporate parents to numerous subsidiaries, do not issue insurance policies. Moreover, the entities had no role in issuing or handling the insurance policies by AIG Specialty or any other insurance policies covering Shine's conduct in Iowa. The entities are incorporated under the laws of Delaware, and their principal places of business are in New York. The entities have no offices or employees in Iowa. The entities do not conduct business in Iowa nor are the entities even registered to do business in Iowa. From the limited record before me, it appears that AIG, Inc. and AIG Property Casualty were not in some other way affiliated with Iowa by other contacts. For the above reasons, I find that AIG Claim, Inc.'s letter is insufficient to support the inference that AIG, Inc. and AIG Property Casualty "purposely directed [their] activities" at Iowa, or Shine's claims "arose out of or relate[] to those activities." *See Johnson*, 614 F.3d at 794. The letter does not justify subjecting AIG, Inc. or AIG Property Casualty to the exercise of specific personal jurisdiction under the due process clause.

In addition, this does not appear to be a case in which a letter from AIG Claims, Inc., a claims handling agent of AIG Specialty Lines Insurance Company, to Shine confers jurisdiction on AIG, Inc. or AIG Property Casualty because the parent corporations "so controlled and dominated" AIG Specialty's affairs. *See Viasystems, Inc.*, 646 F.3d at 596 ("'[P]ersonal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and

dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003))). As the defendants point out in their declarations and memorandums, AIG Specialty is a distinct and separate corporate entity from AIG, Inc. and AIG Property Casualty, and there is not a link to Iowa with these two entities, aside from the contact made by their indirect subsidiary, AIG Specialty, with Shine. *See Steinbuch*, 518 F.3d at 589 ("[M]ere ownership of [a] subsidiary is insufficient to justify personal jurisdiction." (citing *Epps*, 327 F.3d at 648–49)); *see also Epps*, 327 F.3d at 648–49 ("A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary."). In the words of the defendants,

> [The three entities] have separate directors, officers, books, and records, and observe the legal formalities for maintaining separate entities. [Patrick Burke's Declaration at 2–3; Jihan Nelson's Declaration at 3.] Further, AIG, Inc. and AIG Property Casualty do not pay the bills, invoices, expenses or losses of AIG Specialty, and they do not exercise control of the business operations of AIG Specialty or its employees. [Patrick Burke's Declaration at 2; Jihan Nelson's Declaration at 3.] The mere ownership—even majority ownership—of a subsidiary is insufficient to allow jurisdiction to attach based on the subsidiary's actions and contact with the forum state. *Viasystems, Inc.*, 646 F.3d at 596.

Defendants' Memorandum In Support of Their Motion To Dismiss at 10–11.

Shine fails to present any evidence or documentation to contradict or weaken the credibility of the declarations of Patrick Burke and Jihan Nelson. Those declarations support the assertion that AIG, Inc. and AIG Property Casualty do not exercise any control or domination over AIG Specialty's business operations or its employees so as to confer personal jurisdiction over AIG, Inc. and AIG Property Casualty based on the acts

of AIG Specialty. Shine also does not provide me with affidavits, testimony, or documents to support an alter-ego theory of personal jurisdiction. Only the one letter written by AIG Claims, Inc. accompanied Shine's Resistance Memorandum. Thus, I cannot find that the indirect subsidiary entity, AIG Specialty, is the alter ego of the nonresident corporate defendants, AIG, Inc. and AIG Property Casualty, based on the current record.

<strong><em>c. The Last Two "Secondary Factors": Iowa's Interest in Providing a Forum and Convenience of the Parties</em></strong>

Having considered the first three "primary factors" above (*i.e.*, the nature and quality of the defendants' contacts with Iowa; the quantity of the defendants' contacts with Iowa; and the relation of Shine's cause of action to the defendants' contacts), I turn to consider the two "secondary factors" (*i.e.*, the interest of Iowa in providing a forum for its residents and the convenience of the parties) for evaluating the propriety of personal jurisdiction under the due process clause. *See Muse v. Bravo Sports*, No. 4:04-cv-00571, 2005 WL 6050732, *4 (S.D. Iowa 2005); *see also Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). My discussion in *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.* in 2013, on these two "secondary factors" is applicable here: Iowa "has an interest in providing a local forum in which its resident corporations may litigate claims against non-residents," but "Iowa's 'interest in providing its residents with a forum cannot make up for the absence of minimum contacts.'" No. C11–3005, 2013 WL 139510, *11 (N.D. Iowa Jan. 10, 2013) (quoting *Digi-Tel Holdings, Inc.*, 89 F.3d at 525). "Additionally, the convenience of the parties is, at best, a neutral factor due to [AIG, Inc.'s and AIG Property Casualty's] extremely limited presence in Iowa." *Id.* Also, Shine would likely find an Iowa forum more convenient whereas the defendants would find it more convenient to litigate in Delaware, where the companies are incorporated, or New York, where the companies have their

principal places of business. Therefore, considering the "secondary factors" above does not change my conclusions that AIG Inc. and AIG Property Casualty are not subject to specific or general personal jurisdiction in this forum.

In sum, the five-factor test for "minimum contacts" militates against a conclusion that invoking personal jurisdiction over AIG, Inc. and AIG Property Casualty is appropriate. I find that Shine did not make a *prima facie* showing of general or specific personal jurisdiction over these defendants.

## B. Rule 12(b)(6) Motion: Failure to State a Claim

In addition, the defendants seek dismissal of all claims against AIG, Inc. and AIG Property Casualty pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*,

686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[15] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

---

[15] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft*, 556 U.S. at 129 S.Ct. 1937.

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must

plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

### 1. *Arguments of the Parties*

The defendants contend that Shine's petition must be dismissed as it fails to state a claim against AIG, Inc. and AIG Property Casualty pursuant to Rule 12(b)(6). Defendants' Memorandum In Support Of Their Motion To Dismiss at 3, 11–12. Furthering this argument, the defendants assert that AIG, Inc. and AIG Property Casualty never "issue[d] an insurance policy to Shine Bros," and they "owe no legal duty to Shine Bros." *Id.* at 3. No contractual relationship formed between AIG, Inc. and AIG Property Casualty so as to give rise to a justiciable controversy. "[I]n the absence of a justiciable controversy regarding the legal relationship of two parties," the defendants write, "a case should be dismissed for failing to state a claim upon which relief can be granted." *Id.* at 11 (citing Fed. R. Civ. P. 12(b)(6)).

In addition, the defendants assert that Shine seeks to recover damages under an insurance policy that was issued by AIG Specialty, a separate and indirect subsidiary. *Id.* Shine "does not allege that AIG, Inc. or AIG Property Casualty are parties to the AIG Specialty Policy," or that Shine "is a party to any insurance policy issued by AIG, Inc. or AIG Property Casualty." *Id.* Without an insurance policy or contractual relationship established between Shine, AIG, Inc., and AIG Property Casualty, the defendants argue that a "breach of contract action" and "fiduciary duty claim or bad faith claim" cannot be brought against AIG, Inc. or AIG Property Casualty. *Id.* at 12 (citing

*Jones Distributing Co. Inc. v. White Consul. Industries, Inc.*, 943 F. Supp. 1445, 1465 (N.D. Iowa 1996); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988)).

Elsewhere, in the defendants' Reply Memorandum, the defendants argue that Shine fails to refute the fact that there is no legal or contractual relationship between Shine, AIG, Inc. and AIG Property Casualty, which is required for Shine's claims to exist. Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 6. The defendants further argue that Shine's reliance on *Kinstler v. Saturday Evening Post Co.*, 507 F.Supp. 113 (S.D.N.Y. 1981), "for the general proposition that, in certain extremely limited circumstances, a corporate parent can be responsible for the acts of its subsidiary is not on point." *Id.* Citing *Viasystems, Inc.*, 646 F.3d at 596, the defendants suggest that neither AIG, Inc. nor AIG Property Casualty "so control and dominate" AIG Specialty's affairs so that AIG Specialty's "separate corporate form can be disregarded." *Id.* According to the defendants, Shine has not, and cannot, allege differently. Thus, based on the above, the defendants request that Shine's claims against AIG, Inc. and AIG Property Casualty be dismissed for failing to state a claim, pursuant to Rule 12(b)(6), as no justiciable case or controversy exists against the two entities.

Shine counters that sufficient facts exist "to support a 'reasonable inference' that AIG, Inc. and [AIG Property Casualty] have a relationship with Shine Bros. Corp." Plaintiff's Memorandum of Authorities in Support of its Resistance at 7. For that reason, Shine's claims against AIG, Inc. and AIG Property Casualty must survive the defendants' motion to dismiss under Rule 12(b)(6). *Id.* Shine notes that the issues presented by the defendants' motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) are "closely related." *Id.* Advancing its argument that a corporate parent can be liable for its subsidiary's breach of a contract, Shine cites to *Kinstler*, 507 F.Supp. at 113. *Id.* at 7–8. There, the District Court for the Southern District of New York denied a defendant's Rule 12(b)(6) motion, without prejudice, for the purpose of allowing the plaintiff to

conduct discovery. In reaching that conclusion, the district court reasoned, "At this state in the litigation we cannot say, as a matter of law, that plaintiff could prove no state of facts showing participation by Defendant Curtis [(the corporate parent)] in the distribution of the allegedly offending issues of the Saturday Evening Post [(the subsidiary)]." *Id.* at 8 (quoting *Kinstler*, 507 F.Supp. at 114).

Similar to the facts presented, here, Shine argues that at this stage in the litigation "it cannot be determined, as a matter of law, that AIG, Inc. and [AIG Property Casualty] did not participate in the decision to deny coverage to Shine for the EPA Complaint either directly or indirectly through AIG Claims, Inc. or AIG Specialty Lines Insurance Company." *Id.* In conclusion, Shine asserts that the "same facts" supporting Shine's request for jurisdictional discovery also "support denying, or at least deferring" a ruling on the defendants' Rule 12(b)(6) motion. *Id.*

### 2. Analysis of Rule 12(b)(6) Motion

I now turn to analyze the defendants' second Rule 12 Motion to Dismiss. As alluded to above, Shine relies heavily on *Kinstler*, 507 F.Supp. at 113, a brief opinion written by the District Court for the Southern District of New York. Indeed, the crux of Shine's response to AIG, Inc.'s and AIG Property Casualty's Rule 12(b)(6) motion rests on *Kinstler*. *Kinstler* involved a plaintiff who brought an action for breach of contract against the Saturday Evening Post, a subsidiary, and Curtis Publishing Company, the corporate parent of the Saturday Evening Post. In *Kinstler*, the district court denied the corporate parent's motion to dismiss pursuant to Rule 12(b)(6), and reasoned that it could not "say, as a matter of law, that plaintiff could prove no state of facts showing participation by defendant Curtis in the distribution of the allegedly offending issues of the Saturday Evening Post." *Kinstler*, 507 F.Supp. at 114. For that reason, the district court denied the defendant corporate parent's motion to dismiss under Rule 12(b)(6),

"without prejudice to its renewal after completion of discovery." *Id*. The defendants contend that Shine's reliance on *Kinstler* is misplaced. I agree.

It is implausible based on the record before me that Shine has a claim against AIG, Inc. and AIG Property Casualty. No legal or contractual relationship was formed between Shine and AIG, Inc. and AIG Property Casualty because neither defendant issued insurance to Shine. Rather, AIG Specialty, a separate and indirect subsidiary, was the issuing insurance company that provided insurance to Shine. The defendants are also correct in relying on *Viasystems*, 646 F.3d at 596, in support of their argument that AIG, Inc. and AIG Property Casualty did not control and dominate AIG Specialty so as to disregard AIG Specialty's separate corporate form. *See* Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 6. As noted above, I granted the defendants' Rule 12(b)(2) motion to dismiss AIG, Inc. and AIG Property Casualty. Even if this Court had personal jurisdiction over those two entities, I would grant the defendants' Rule 12(b)(6) motion to dismiss for Shine's failure to state a claim.

### C. Jurisdictional Discovery

The Eighth Circuit Court of Appeals reviews a district court's denial of a plaintiff's motion for jurisdictional discovery for abuse of discretion. *Viasystem, Inc.*, 646 F.3d at 598 (citing *Steinbuch*, 518 F.3d at 589). In *F.D.I.C. v. Dosland*, 50 F.Supp.3d 1070, 1077 (N.D. Iowa 2014), I recently discussed the guidance of the Eighth Circuit Court of Appeals for district courts on exercising "their discretion in deciding whether or not to allow jurisdictional discovery." To facilitate my analysis on whether to grant jurisdictional discovery, I summarize the main points from my discussion in *F.D.I.C.*

First, "jurisdictional discovery is only warranted," according to the Eighth Circuit Court of Appeals, "if the facts necessary to resolve the jurisdictional inquiry are either unknown or can be genuinely disputed." *Id.* (citing *Viasystems, Inc.*, 646 F.3d at 598).

Second, "the Eighth Circuit Court of Appeals has identified several factors that are relevant to the determination of whether or not to allow jurisdictional discovery" based on Rule 56.[16] *Id.* Third, "'[w]hen a plaintiff offers only speculation or conclusory assertions about [the existence of facts demonstrating jurisdiction,] a court is within its discretion in denying jurisdictional discovery.'" *Id.* (citing *Viasystems, Inc.*, 646 F.3d at 598) in turn quoting *Dever*, 380 F.3d at 1074 n.1)). In applying the standards set forth in *F.D.I.C.*, I noted that "[t]he more important question . . . is whether the existence of [the facts necessary to resolve the jurisdictional inquiry] [are] still unknown." *F.D.I.C.*, 50 F.Supp.3d at 1081; *see also Viasystems, Inc.*, 646 F.3d at 589 (indicating that jurisdictional discovery is only warranted if the facts necessary to resolving the jurisdictional inquiry are either unknown or disputed).

If the plaintiff "offer[s] documentary evidence, and not merely speculations or conclusory allegations," about the defendants' contacts with the forum state, a district court should not dismiss the action without permitting the plaintiff to take some jurisdictional discovery. *Steinbuch*, 518 F.3d at 589–90 ("On the basis of the current record which reflects that [the plaintiff] offered documentary evidence, and not merely speculations or conclusory allegations, about [a defendant's] contacts with [the forum state], the district court should not have dismissed his action against [that defendant] without permitting [the plaintiff] to take some jurisdictional discovery to establish whether

---

[16] In *F.D.I.C.*, I noted that "[c]ourts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts." *F.D.I.C.*, 50 F.Supp.3d at 1077. Under Rule 56(f), which is now Rule 56(d), a party requesting discovery must file an affidavit describing the following: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and why the affiant's efforts were unsuccessful." *Id.* (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) in turn citing *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 422 (2d Cir. 1989)).

general personal jurisdiction would be justified."); *see also Foreign Candy Co., Inc.*, 950 F.Supp.2d at 1036 (finding that the plaintiff was not entitled to jurisdictional discovery where the plaintiff failed to rebut, or even attempt to rebut, the defendant's affidavit distinguishing the defendant from a third-party retailer; the plaintiff offered only "speculative and conclusory assertions that [the defendant] might have some other contacts with Iowa"; and the plaintiff provided no "documentary evidence" to support "any inference of additional contacts that [the defendant] might have with Iowa.").

### 1.    *Arguments of the Parties*

Shine, alternatively contends that, even if I determine that Shine did not establish a *prima facie* case for personal jurisdiction over AIG, Inc. and AIG Property Casualty, I should permit Shine "to conduct jurisdictional discovery in this case prior to ruling on the Defendants' motion." Plaintiff's Resistance at 1. Shine relies on *Lakin*, a case in which the Eighth Circuit Court of Appeals reversed a district court's decision to deny a plaintiff's request to conduct jurisdictional discovery concerning the "quantity of contacts" of the defendant's banking website. Plaintiff's Memorandum of Authorities in Support of its Resistance at 6. Shine summarized the holding of the Eighth Circuit Court of Appeals as follows:

> [The Eighth Circuit Court of Appeals] held that the Plaintiff should have the opportunity to conduct jurisdictional discovery to obtain information related to the contacts between the forum state's resident and the Defendant's website, including the number of times the state's residents had accessed the website and the number of residents that had requested additional information about the defendant's services, etc., for the purpose of determining whether the Court could exercise general jurisdiction over the defendant.

*Id.* (citing *Lakin*, 348 F.3d at 704). Thus, according to Shine, even if the information on AIG's website is insufficient to establish personal jurisdiction over AIG, Inc. and AIG

Property Casualty, the information on AIG's website "provides the necessary basis for permitting Shine to conduct jurisdictional discovery prior to ruling on the motion to dismiss." *Id.*

In addition, Shine requests permission to conduct jurisdictional discovery as to "the identity of potential additional defendants." *Id.* Although AIG Claims, Inc. sent a letter denying coverage to Shine, the defendants' Disclosure Statement, Motion to Dismiss, and supporting memorandums, make no mention of AIG Claims, Inc. It is also unclear whether "AIG Specialty *Lines* Insurance Company," an entity referenced in the letter from AIG Claims, Inc. is a different entity from "AIG Specialty Insurance Company," which the defendants refer to as "'a proper defendant'" in this case. *Id.* at 7. According to Shine, whether these other entities "are controlled by, or are agents of" AIG, Inc. and/or AIG Property Casualty "is material to the [defendants'] pending [Rule 12(b)(2)] motion, because their contacts with Iowa may support the Court's exercise of personal jurisdiction over AIG, Inc. and/or [AIG Property Casualty]." *Id.* This information is also relevant to the defendants' pending Rule 12(b)(6) motion because if AIG, Inc. and AIG Property Casualty participated directly or indirectly through AIG Claims, Inc. and AIG Specialty Lines Insurance Company, then they may be liable for breaching a contract and fiduciary duties, or bad faith, as alleged by Shine. *Id.* at 7–8.

In reply, the defendants take issue with Shine's request for jurisdictional discovery because Shine's "speculation regarding [AIG's] website's traffic and the defendants' relationships with their subsidiaries cannot overcome the uncontested declarations attached to the defendants' motion." Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 2. Quoting *Viasystems, Inc.*, 646 F.3d at 596, the defendants note, "A bare assertion that jurisdictional discovery would likely reveal facts necessary to support jurisdiction is 'entirely speculative, and when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion

in denying jurisdictional discovery.'" *Id.* at 4. While Shine requests jurisdictional discovery to determine the number of Iowa residents that visited AIG's website, the defendants contend that AIG, Inc.'s website "as a matter of law cannot establish general jurisdiction over the corporate entities regardless of who visits the site." *Id.* at 4–5 (citing *Epps*, 327 F.3d at 642).

The defendants next distinguish *Lakin*, the case relied upon by Shine, because the website in *Lakin* "involved consumers applying for home-equity loans online, accessing their accounts, and servicing of the loans through the website." *Id.* at 5 (citing *Lakin*, 348 F.3d at 713). There, jurisdictional discovery was permitted, according to the defendants, "only because the website interacted with customers and provided services that, if sufficient in quantity, could demonstrate intentional acts towards the forum state sufficient to create general jurisdiction." *Id.* The defendants also suggest that *Lakin* should not be given great weight by highlighting that *Lakin* preceded *Daimler*, 134 S.Ct. 746, and *Goodyear Dunlop Tire Operations*, 131 S.Ct. 2846, both of which heightened the requirements to establish general personal jurisdiction on a defendant such that the defendant's contacts with the forum state make the defendant "at home" there. *Id.*

Then, the defendants cite to a decision arising out of the Ninth Circuit as exemplifying that, following *Goodyear*, "courts have rejected general jurisdiction even where websites are 'highly interactive' and contain content specifically aimed at forum residents.'" *Id.* (quoting *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011)). AIG's website, the defendants argue, "is not sufficient to confer general jurisdiction." *Id.* The defendants go so far as to allege that Shine's requested discovery is "wasteful and only designed to harass." *Id.* Buttressing the defendants' allegation is Shine's "sheer speculation" regarding the relationship between AIG, Inc., AIG Property Casualty, and their subsidiary entities, including AIG Specialty. *Id.* Shine fails to rebut the declarations attached to the defendants' motions, which "ably demonstrate" that AIG,

Inc. and AIG Property Casualty "are separate and distinct entities from their subsidiary insurance companies." *Id.* The defendants contend that Shine's "fishing expedition" would not reveal otherwise. *Id.* at 5–7. Thus, the defendants request that I prohibit jurisdictional discovery and dismiss with prejudice Shine's petition against AIG, Inc. and AIG Property Casualty.

### 2. *Analysis of Jurisdictional Discovery*

As the Eighth Circuit Court of Appeals explained in *Lakin*, 348 F.3d at 713, "the decision whether to grant jurisdictional discovery in a case is left to the trial court's sound discretion." In *Osborn & Barr Communications, Inc. v. EMC Corp., Inc.*, the United States District Court for the Eastern District of Missouri asserted that "[n]umerous cases hold that district courts have the discretion to deny jurisdictional discovery when a plaintiff has failed to make a prima facie case of jurisdiction." No. 4:08-CV-87, 2008 WL 341664, *1 (E.D. Mo. Feb. 5, 2008) (citing four circuit court cases and two district court cases in support of that legal proposition.)

Here, Shine failed to establish a *prima facie* case of general or specific personal jurisdiction over AIG, Inc. or AIG Property Casualty. Therefore, it is within my discretion to deny Shine's request for jurisdictional discovery. I recognize that Shine seeks to uncover some evidence as to AIG, Inc. and AIG Property Casualty to support jurisdiction. However, "[t]he discovery process established by the Federal Rules is not intended to establish jurisdiction." *Id.* at *2; *see also Viasystems, Inc.*, 646 F.3d at 596 ("Viasystems' assertion that jurisdictional discovery 'would likely' reveal these facts is entirely speculative, and '[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'" (quoting *Dever*, 380 F.3d at 1074 n.1)).

In addition, even if Shine was able to establish personal jurisdiction over AIG, Inc. and AIG Property Casualty by conducting jurisdictional discovery, such discovery

is unnecessary because it is implausible for Shine to state a claim against either AIG, Inc. or AIG Property Casualty pursuant to Rule 12(b)(6). On a related note, Shine relies on *Lakin*, 348 F.3d at 712–13, in furtherance of its request for jurisdictional discovery. However, in addition to the reasons cited by the defendants, *Lakin* is distinguishable from this case as the defendants in *Lakin* did not submit a Rule 12(b)(6) motion to dismiss. *See id.* at 714; *see also Lakin v. Prudential Securities, Inc. et al.*, Case No. 01-4163-CV-C-5 (W.D. Mo. March 15, 2002) (unpublished op.). For the above reasons, dismissing AIG, Inc. and AIG Property Casualty is appropriate.

## V. CONCLUSION

Accordingly, because the record reveals that AIG, Inc.'s and AIG Property Casualty's minimum contacts with Iowa are insufficient, this Court lacks specific and general personal jurisdiction over AIG, Inc. and AIG Property Casualty. Therefore, I grant the defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). In the alternative, I also grant the defendants' motion to dismiss for Shine's failure to state a claim against AIG, Inc. and AIG Property Casualty pursuant to Rule 12(b)(6). The defendants do not contest that AIG Specialty is subject to personal jurisdiction in Iowa. In fact, the defendants assert that AIG Specialty "is a proper defendant" in this dispute. Defendant's Memorandum in Support of its Motion to Dismiss at 2 ("AIG Specialty, the issuing insurance company, is a proper defendant."). The defendants are ordered to inform Shine of the correct name of the "proper defendant," however, within seven days of the filing of this Memorandum Opinion and Order. This is because the letter from AIG Claims, Inc. to Shine, dated June 18, 2014, indicates that AIG Claims, Inc. "is the authorized claims handling agent for AIG Specialty Lines Insurance Company," and AIG Specialty is now referred to as "AIG Specialty Lines Insurance Company." *See* Plaintiff's Memorandum of Authorities in Support of its

Resistance at 10. No additional information is provided by the defendants to clarify this matter. Once Shine is informed of the proper defendant's name, Shine will be permitted to amend its petition. There is no reason to hold up the litigation any longer. This case may proceed against the appropriate defendant (*i.e.*, AIG Specialty or AIG Specialty Lines Insurance Company) as the defendants concede that "[w]hatever relief available to Shine Bros. for its contractual and extra-contractual claims is still available even if only AIG Specialty remains in the case." *See* Defendants' Reply Memorandum In Support Of Their Motion To Dismiss at 6.

      **IT IS SO ORDERED.**

      **DATED** this 4th day of June, 2015.


MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA